Both parties ready to proceed? And Mr. Shaw, did you have a comment to make? Yes. May I close? Yes. May I close? Yes. May it please the court and counsel, I know we went through this a couple months back. I disclosed this to counsel last night in the event that Justice Zinoff was on the panel today. I disclosed to her that her brother, Allen, has been a mentor and a friend of mine for 40 years. And I did represent him on a real estate transaction in the past. That has been previously disclosed to Justice Zinoff in the last case I had before this court. It was non-problematic, but I believe I have a duty to disclose it to you, counsel. And he had no problem? Judge, no, I would move that up to Justice Zinoff. As far as her relationship with Mr. Slaw, he's advised me that there is none. So I trust that there is none. Right. I would indicate for the record that I do not recall having met Mr. Slaw or my brother, having spoken about him, notwithstanding the length of their relationship. And I do believe I can be fair and impartial in this case. And I believe both parties have received the court's order to address the question of jurisdiction. We've also received a motion by the appellant to argue additional authorities. Yes. Does the appellee have any objection to arguing the Supreme Court rules? No, I did not receive the motion. So I would expect that we would both be arguing additional rules in cases that were cited by the court. I don't know why you didn't get a copy. I filed Monday evening a motion for leave in response to the court's order of January 4th. I asked that we be asked to cite additional authority, most significantly Supreme Court Rule 366, and a case which is a little bit different facts but was out of this district and in fact drafted by Justice Zinoff in re the marriage of Harris. Would you share a copy of that case with counsel? I will. I think I do have an extra copy. It's marked up. Hold on one moment. Your Honor, this is case number document 2-18-0351. And a staff order from the appellant. The undue staff order preventing the appellant from arguing on behalf of the appellant. The appellant is preparing to meet each law requiring the appellant to defend himself or herself. I apologize. I was a little quick on the draw, but Mr. Shaw, you've already made it. We've made a record. With the sharing of that additional authority, is there any objection to arguing that case? Your Honor, I do have additional authorities myself. I can share those with counsel and be a part of those as well, but I have no objection. Why don't you go ahead? Given that both parties now have reviewed the additional authorities that each party would like to argue on the question of jurisdiction, Mr. Slaw, do you have any objection to those authorities? No. All right. Mr. Slaw may proceed. Yes. Please stay close to the microphone. Pay attention to the time signal. If additional time is necessary, the court will so indicate. And we've read your briefs. We're familiar with the facts. Why don't you just go right to the issue of jurisdiction? Okay. May it please the Court and counsel, in response to the court's order of January 4th, 2019, which I did receive last Friday, first of all, I'd like to make a statement. When I did file this brief back in August of last year and with the notice of appeal, I was aware at that point after my retention that there would be a possible issue as to jurisdiction of this case. In review of the rules and the necessary statute, I believe that this court does have jurisdiction, and here's the reason why. And I understand the court's aware of the facts, but I think I need to talk somewhat about the facts in my argument of why this court has jurisdiction. There was a hearing on December 14, 2017. The case was originally placed on the trial docket of Judge Demling out of the 18th Circuit. My client, Amnesty Truer, did not appear when the case was called in the morning. There were cross petitions for dissolution. My client was the initial petitioner. Counsel's client, the appellee to this cause, was the cross petitioner. My client failed to appear at that point. Judge Demling dismissed her petition for warrant of prosecution and set the cause for a hearing, and it eventually was heard at 1.30 the afternoon of the 14th. The reason that I'm bringing up the dismissal for warrant of prosecution is important. It was also set forth in the judgment, which is part of the common law record. At no point did Judge Demling, in his order, default my client, nor did he sanction her, saying that she was barred from testifying. And I'll tell you what the relevance is. I'm going to tie it up. So the case then was called again on the docket at 1.30. My client did not appear, for the reasons set forth in the record, and she was hospitalized. And we can go into that later, if the court wants to. The record is set forth when she testified in open court on February 20th. No affidavits from any doctors, though. That's correct. There was no medical records that she was hospitalized. At what point? In the hearing on the 20th or the trial on the 14th? Either one. Okay. She did testify, though, in open court. I know that. Yes. Correct, Judge. Your Honor. What does any of this have to do with our jurisdiction? Here's how it's relevant, in my opinion. And the rules are somewhat, in my opinion, conflicting. If you look at Rule 303A1 and A2 and compare it to Supreme Court Rule 274, especially 303A2, in my interpretation of it, that the way 303A2 reads, that there is no possibility of filing any second post-trial motion so as to toll the time, timing, filing the appeal. In my opinion, that contradicts the language in 274, Supreme Court Rule 274, which precisely points out that you can file a second post-trial motion if the first post-trial motion affects the final judgment in any way. Well, how did the motion to vacate in any way affect that final judgment? Here's my theory on that. The order of February 20th, which denied the initial, February 20, 2018, which denied the initial motion to reconsider, which was filed on January 11th of 2018, it was timely within the 30 days, been a practitioner for 36 years now. In that hearing, Judge Demling didn't hear an argument on a pleading, didn't hear an argument on an affidavit. He elicited testimony from both, and the transcript of the proceedings will reflect that Anastasiura, the appellant in this case, was called to testify. It was an evidentiary hearing. Issues, although not raised in the motion to reconsider. I took it as almost like a due process argument where she was sick, she was threatening suicide, that she was taken by a fire department or police ambulance to a hospital. I'm assuming it was Northwest Community Hospital in Arlington Heights. And she testified at the hearing that she was in what appeared to be a psychiatric ward from December 14th to December 18th, a four-day period of time. By Judge Demling, by the trial court eliciting that type of evidence and testimony, it's in essence raising facts that weren't at the original trial hearing of December 14th. New issues, he allowed her to testify because he didn't bar her as part of the... There's no effect on the judgment under Rule 274. There's only one post-trial motion unless the judgment is modified. How does a subsequent testimony that doesn't affect the judgment affect our jurisdiction? Because when she was called to testify in the order on February 20th, states it simply, the motion to vacate is denied based on the transcript of proceedings. I'm paraphrasing it. If the transcript of proceedings taken as a whole, which that's what the order said, new issues come to effect regarding due process, fairness, although Judge Demling did say that... And then at that point, the defendant had an opportunity to file a notice of appeal, correct? Correct. Had that opportunity, yes. Yes, and if you pass that opportunity, the judgment hasn't been affected. There's no jurisdiction here. I disagree, and here's why. In reading the Harris case, and I gave counsel my copy of the case, but I have notes here. Yes, the Harris case, written opinion by Justice Zinoff, it's a different statute. It was 304B6, which involved custody, but I'm going to ask to point to the court's attention in paragraph 14 of that opinion, and it discussed the issue of the single claim rule. In paragraph 14 of the, and Harris, by the way, for the record, is the site on that, as 2015 elapsed second, 140616. I'm asking the court to look at paragraph 14, where both Heather and the trial court appeared to assume that the only relevant final order was the judgment for dissolution marriage. That, as we explain, is not correct. By Judge Denling eliciting testimony as to these theories of what I take as due process type arguments, inability to appear due to a medical condition, it's in essence, it's an implicit ruling regarding a different, he reopened the case, in essence, in my opinion, her elicited testimony on a different issue. In other words, based on Harris, my interpretation of Harris, that a court can look beyond the judgment of dissolution of marriage when trying to determine issues of jurisdiction. Certainly, I believe it, and I'm pointing the court's attention to Supreme Court Rule 366, which I set forth in my motion filed Monday evening. 366A powers, in all appeals, the reviewing court may in its discretion on such terms as it deems just for A4, draw inferences of fact, and 5, enter any judgment, make any order that ought to have been given or made. Rule 366, in order to invoke our discretion under Rule 366, we first have to have jurisdiction. We don't use 366 as a vehicle to obtain jurisdiction. 366 requires that we first have jurisdiction in order to exercise our discretionary powers. And I think that's quite clear in the Bernstein case that you recited or suggested you would discuss. As noted above, the appellate justice in this cause simply did not have jurisdiction over the matter to employ Rule 366 and reinstate the appeal. Again, a different issue, but why he couldn't go there. But the fact remains, the court there has said there was no appellate jurisdiction. I understand, and that's so noted. I do believe, though, that the court in Harris, did Harris involve an issue with custody? There was an oral agreement, which was later put to writing, and then a subsequent motion to reconsider. And I think at that point, this circuit, this appellate district has stated that the judgment for dissolution of marriage is not the only final relevant order. It's my theory that when Justice, I'm sorry, Judge Demling, I was going to say Dudge, but Judge Demling, when he elicited the testimony on the 20th, it was basically, it was a new hearing regarding different issues that weren't necessarily raised at the trial. Then, when he heard the argument on the motion to reconsider back on April the 13th of 2018, there were more issues heard that were new. And clearly, it's my, each hearing, both from December 14th to February 20th to April 13th, each of them, the contents in the hearings, superseded the other. And under Supreme Court Rule 274, it gives you that, it gives a litigant that opportunity. Now, how 303A2, which seems to say, sorry, you're out of luck, versus 274, they seem to me to be contradicting of each other. And then when you read in 303A1, a broad interpretation of 303A1 seems to say that you do have the right to file a motion after a motion. So, it's confusing. Assuming we were to get to the merits, what's your position? My position is, as set forth in the brief, that one, that my client was unable to attend the hearing on December 14th. She was hospitalized with a mental health condition, that there was representation by her counsel to the trial judge, that there was thoughts of suicide hanging herself, that law enforcement from Rolling Meadows went out to the restaurant in Rolling Meadows for a safety check, and she was taken to a hospital. She had no ability to appear on that day. I was to trial courts, you say in your briefs that the award, the court's order was unconscionable. How could it possibly be unconscionable when she received 75% of the net marital estate? Well, I think what happened was, is, there was a trucking business and there was this restaurant down the street from my office. So, what it is, what happened here is she got the restaurant, trucking business, the husband. There was a waiver of maintenance. But the connection is that the property, the restaurant sat on a parcel of real estate that was owned by husband and wife. My client was ordered to sell it. So, you have a lengthy marriage. They each have two businesses. He gets his, she gets hers. In theory, that's great. But by forcing her to sell it, she lost her business. She lost the rights to maintenance. I think that the court's order as set forth on the trial slash prove up on December 14th is unconscionable because of the, there was the waiver of maintenance in a long-term marriage, which was then set up to basically because of the two businesses, but she was forced to sell because she had to take him out of the mortgage. You say in your brief that the mortgage on the building is greater than the equity in the building. That's not true, is it? No. That's not true? No. The building was worth, what, $850,000? And the mortgage was $187,000. How's that possible? Then I... Am I correct? Didn't you say that in your brief? I don't recall that, Your Honor. I don't know if it did, but still, even arguendo, if that's correct, I still believe that the forced sale of an asset with a waiver of maintenance in a very long marriage is not conscionable on its face. All right. The house, the sale of the house was in play much before the final judgment. It had been discussed and I think actually ordered beforehand, and there was some potential split of proceeds if there was more than $400,000 realized for the sale of the house. But on the business, on that property, if and when she sold it, she would receive the entire balance, which I think is pretty close to the values that Judge has set. There was nothing that prevented her from trying to refinance that, was there? None that I'm aware of, but it's still, you have speculative, you're dealing with markets, you're dealing with credit ratings, you're dealing with a lot of variables that she necessarily couldn't control. I'm sorry. Well, by all accounts, even her husband's account, her ex-husband's account, the business was successful. And yes, it needs a place to light, and she must have had some equity in the business, if not just goodwill, just she's got clientele. The issue seems to be that these parties need to be divorced. She brought the petition. They both had illness issues throughout the proceedings, whether confirmed or not, and the only way to resolve this to get them separated, as the Act calls for, is to get them out of business deals together. So we sell that property, or she could have accomplished the same thing by refinancing. But she didn't try that, did she? She did not. But again, it's open to speculation, and number one, it's, well, would she have qualified to refinance? Would it, what was the market? Well, if she had been there, maybe somebody could have asked her. She didn't show several times, the records would indicate, and she never, did she ever do, and did she ever answer any of the discoveries she was ordered to answer? There were discovery issues. I don't know if any was never answered. I don't know that. I was not in the trial. I apologize. All right. Thank you, Mr. Slough. You'll have time for rebuttal. Thank you. Ms. Carter. Good morning, and may it please the Court. On behalf of the appellee, I'd just like to express our gratitude for bringing to our attention the jurisdiction issues so that we have the ability to argue that today, and why my opposing counsel and the appellant raised some interesting interpretations of the rules. I disagree, and we are asking that the Court dismiss this appeal based on lack of jurisdiction. I think the simplest place to look for whether or not this Court has proper jurisdiction is the rules themselves that were pointed out to us. And I don't see the conflict between Illinois Supreme Court Rule 303 and Illinois Supreme Court Rule 274. In fact, I believe that there are many cases that interpret them in conjunction with each other. First, Rule 274 is clear in its language that says a party may make only one post-judgment motion directed at a judgment order that is otherwise final. And that's specifically what the motion to vacate was. It was a motion pursuant to the Civil Code of Procedure, Section 1301. It was made within 30 days of the judgment being entered, and it was asking to vacate the final judgment and the dissolution of marriage. Was there a default in this case, or was there a dismissal of the petition for dissolution of marriage? And going forward on the counterpetition, that had been answered or at least acknowledged. There was the dismissal of the petition for dissolution of marriage in the morning session of the day that the judgment was entered. And then the afternoon session we proceeded on the counterpetition for dissolution of marriage. And had that actually been answered? It had not been. Okay. So there could technically be then called a default even though it was not in writing. Correct. And I believe Judge Demling did reference it as a default judgment on the record. But it was not identified as such in the judgment for dissolution of marriage to the best of my knowledge. And then subsequently on approximately 30 days after the denial of the motion to vacate, the appellant came in and filed a motion to reconsider, which to me on its face raised the same issues that were raised during the motion to vacate pleading, as well as the arguments on the motion to vacate, which my client had objected to. And pursuant to 274, the second motion was not allowed. Now I've done research on this issue, and the courts seem to be split as to whether or not the trial court has jurisdiction to hear the second motion, or whether or not it just has the authority or lack of authority to hear it. But what is clear on all the cases I read was that the second motion did not extend the time or told the time to file the notice of appeal. The notice of appeal was still due 30 days after the motion to vacate was denied. And in fact, the notice of appeal in this case was filed 78 days after the notice of appeal, or excuse me, 78 days after the motion to vacate was denied. Then when we move over to Illinois Supreme Court Rule 303, I think the most important part of this rule is in Section A2, where it says no request for reconsideration of a ruling on a post-judgment motion will toll the remaining of the time within which a notice of appeal must be filed under the rule. It's very clear that the motion to reconsider filed in this case did not give the appellant additional time to file her notice of appeal. And in essence, she missed the 30-day deadline, and therefore this court does not have jurisdiction. How do you respond to counsel's argument that by taking testimony with respect to the motions that somehow extended the time or told the time in essence? And I don't agree with that. I believe in essence there was a small line of cases that I found, and I did give counsel one of the cases that I would cite too, which was an Illinois Supreme Court case of Keener v. Heeran, 253L2D338 in 2009. And there's a small line of cases that will say that the court can look at the way a post-trial motion was presented and possibly treat it as a motion being brought pursuant to 214.01 of the Code of Civil Procedure. In this particular circumstance, I don't think that applies to the motion of vacate, because the motion of vacate was brought within the 30 days after the denial, whereas a 214.01 petition would be brought after the 30 days that had already expired. So I think that's the main difference there. But even if we were to try to apply that theory to the motion to reconsider, I believe it fails. And based on the case law, especially the Keener case, what the court has to do is look at it on a case-by-case basis and see how the petitions were presented and what happened at the trial level. And both of the petitions were not served pursuant to how a 214.01 motion is supposed to be served. We're supposed to have personal service or certified mail or registered mail. And in fact, these motions were both filed and served via e-service. Both of the 214.01 motions, you typically would have 30 days to respond, and then it would be set for hearing. There would be affidavits attached to the 214.01 motion, as well as other evidence presented, which we didn't have in this case in either of the motions. In fact, the motion to reconsider wasn't even signed by the appellant. We certainly had briefed and heard both the motions in a very short order. The motion to reconsider was actually briefed and heard before 30 days had even expired. And then we also have the fact that on the motion to vacate, there was the only evidentiary hearing. And the only evidence presented on the motion to vacate was why she was not present in court, which the court was already aware of through her counsel's references on the record. So there's no new matters raised at that point. And then on the motion to reconsider, there were also no new matters raised at that time because everything that was brought up on the motion to reconsider, as well as argued in court that day, had already been argued at the time of the motion to vacate. So it wasn't bringing any new matters to the court's attention. Well, even if new matters were brought to the court's attention, and I tend to agree with you, I don't see that, did any of that change the ultimate final judgment that was entered back in December of 2017? No, it did not. That remained constant? It did. The only information brought forward from the appellant herself was why she was not present in court in the afternoon session. And the fact that she stated her counsel did not advise her of the trial date and that's why she missed the morning session. But there was no new evidence with respect to any of the underlying issues in the dissolution of marriage, such as income, property, earnings capacity, anything of that nature. So it did not change the actual ruling of the judgment of dissolution of marriage, no. With regard to the merits, is there anything you wish to add? If we were to somehow find that we had jurisdiction. Yes. Thank you. What I would add is that I believe the trial court ruled appropriately by dismissing the petition for dissolution of marriage and proceeding in the absence of the appellant. Just based on his knowledge of the case, she was not diligent in following her case. In fact, there was in the record that she missed court appearances, in particular the first one. She never filed a response to any of the motions that were filed by my client. There were six motions. She filed no responses, including to the counterpetition of dissolution of marriage. She required us to come back to court on six occasions in order to obtain discovery compliance, which still wasn't complied with fully. When we were set for hearing to sanction her for that discovery compliance, that is when she came into court and represented that she had stage three cancer, of which she was ordered to produce documents to prove that, and she never did. Right before our second trial date, she tried to continue that on the basis of obtaining a business valuation, which she had failed to do in the two and a half years that the case was pending. After all of these occurrences, when we got to the date of the trial, it became clear to the trial court that this was just another step in her prolonging and delaying the case, that he was not going to allow it to go on because there was the right of my client to be divorced and to be done with this case after two and a half years. I can't dispute the fact that she went to the hospital in the afternoon, but there was really no testimony as to why, what she said to the paramedics at the time. And I believe it was the court's implication that she could have created this situation in order to delay the trial again. As far as the unconscionability argument, there was no evidence presented by the appellant as to why this judgment itself was unconscionable. She had the opportunity to plead it. She had the opportunity to testify to it, and she chose not to. Everything that counsel is raising is speculation. And perhaps there is some basis for it, but there is no factual or evidentiary basis to make those arguments. Well, counsel makes an argument that I assume he thinks doesn't require any testimony. It's called unconscionable as a matter of law. What is that? I'm not familiar with that because I don't believe there's enough in the record itself to say this judgment is unconscionable as a matter of law. We went through all of the factors from the maintenance statute as well as the property division statute. The court certainly said that it considered all of the testimony, that it heard all of the testimony, that it felt that it was conscionable based under the circumstances. And the only factors that the appellant raises is that, one, she was being forced to sell her marital residence. Well, both parties lived in the residence. My client was being forced to sell it as well. This is a common occurrence in dissolution of marriages because we need to separate the parties. So she wasn't being evicted from her home any more than my client. Plus, she was given a reasonable opportunity to put the house on the market. She was also getting the majority of the share of the equity from that house. Her second argument is that she was being forced out of her business and, in essence, not able to earn income afterwards. There's no basis in the record for that, but I would say that she wasn't being forced to sell her business. She was actually awarded 100% of her business. She was only being compelled to sell the property because my client was joint on the property as well as joint on the loan. And she could very easily either continue to operate her restaurant out of the same location under a new owner, rent a new location, or perhaps use some other means to earn income. But the record's unclear as to why these arguments are even being heard because there's no testimony from the wife of any of this. So what we have before you is that there is a 30-plus year marriage where both parties are approximately the same age. The wife is two years older than the husband. My client definitely has health issues that he testified to. The wife had a hysterectomy during the case. She made representations even though they have not been provided with medical evidence. She made representations. She had cancer. The parties earned an equal income during the marriage or at least at the time of the final dissolution of marriage. So under the maintenance statute and under the current guidelines, she would not have been awarded maintenance regardless. And she was given approximately 75%, 76% of the marital estate. She was awarded $530,000 more than my client. I don't know how that could be found unconscionable as a matter of law. I would indicate for the record you had started your argument with a note of appreciation to the court for raising the issue of jurisdiction, and we have an independent duty and responsibility to examine jurisdiction in every single case before we get to any other issues. So that is what was done in this case. All right. Thank you. Thank you. Ms. Schlott. May I ask a question? Yes. Before I don't want to throw off what you wanted to say, but what is the concept of unconscionability as a matter of law? Well, it's my interpretation that given the length of the marriage, notwithstanding, yes, she had this business, and yes, it apparently had a value, there was no real forensic testimony, and it's based on speculative. It's just a speculative that, you know, it's based on market values and ability to obtain credit. So it's a speculative value. You know, I guess anybody can say any real estate is a speculative value. So my theory is, and my utterance in my brief was that I believe, given the length of the marriage, with the language of forced to sell this business and its arguendo that the waiver of maintenance, the consideration for the waiver is the fact that she got this business, and being a 30-year marriage, it was possibly permanent maintenance. I just believe that it's just an unconscionable set forth. I found it, in my opinion, I thought it was egregious. Is there any excuse at all in the record for your client's behavior during the course of the pendency of the dissolution of the petition? Is there any excuse for her lack of diligence? Other than in my review of the record, there was complaints of cancer, there was complaints of course with the events of the 14th. When you talk about cancer, she was ordered to provide documentation. I understand. What's the excuse for the lack of diligence? There is none. But my response to that is, okay, they're up for trial on the 14th. There were no motions, 219 motions for sanctions. There were no motions filed to bar and limit any, under the theory of perhaps waiver, any issues of diligence should have been waived at that point. No petitions before the court pursuant to sanctions under Rule 219, no motions to bar evidence and limit any tender whatsoever. So I would say at that point. Are you saying that the trial court cannot rule on diligence unless there's motions for sanctions? I'm not saying, what I'm saying is that by not going forward with it, counsel for, in this case, may have waived that and put forth the testimony. The court in its discretion can look at a lot of factors, including attitude in court and things like that. I just wanted to make one comment. I read this rule multiple times. I'm going to quote from Supreme Court Rule 274, where it says, until disposed, comma, each timely post-judgment motion shall toll the finality and appealability of the judgment or order at which it is directed. Again, until disposed, each timely post-judgment motion, even 303A2 gives a litigant the ability to file a motion to reconsider a motion just according to the statute on its face, doesn't enable it to toll an appeal limitation period. But this language in 274 to me is problematic in that it sets up a contradiction between the two rules because 274 clearly states, until disposed, each timely post-judgment motion shall toll the finality and appealability of the judgment or order at which it is directed. Therefore, even the second motion to reconsider filed by counsel on March 15th of 2018, which was disposed of on April 13th of 2018, still, it was timely. So 274 seems to contradict an inability to bring for this court to have jurisdiction. To me, it's troublesome language, and I just wanted to note that. Contradictive. I thank both parties for their arguments today. A written decision will be issued in due course. The Court stands in recess until the next case is called.